Okay, now we'll go back to where we were planning to start in the first meeting with Mr. Bright and Mr. Melnick are here. Alright, 14-1037 SmartMetric Inc. v. Mastercard International. 14-1037 SmartMetric Inc. v. Mastercard International. Mr. Bright, whenever you're ready. Good morning. I'm pleased to report our apologies. We were sitting on the fourth floor mindlessly, unaware of the fact that we should be on the second floor. So I apologize for any inconvenience to the court this morning for that. This is a case of summary judgment on appeal, summary judgment of non-infringement. There are two defendants, Mastercard and Visa, and I mention that in part because in the ruling of the trial court, there is precious little evidence cited by the district court from Mastercard's declarant. They're only declarant on this subject. Can I ask you about the claim construction? Yes. The claim construction, I'm not sure which claim construction you're advocating now because the ones in your gray brief are different from the ones in your blue brief and the ones you advocated below. Thank you, Your Honor. You're right about that. I think the simplest thing here would be for the court to say that when we're talking about a local access number, it really should be, the district court defined it to mean something close to where the user of the card is. I think it really has more to do with the proximity of the reader into which receives the card to the place where the transaction is processed. So are you saying that the ones in your gray brief are the ones you now think are controlling? Yes, Your Honor. I mean, isn't that late? It's a little late. I thought claim interpretation was always an issue for this court. Well, yeah, but you have to preserve your arguments on appeal, and you don't really preserve them by presenting them in a gray brief, which your opponent or your friend has no opportunity to respond to. Well, we also proposed it in our opening brief, but I modified it in the gray brief to make it, to try to make it a little simpler. It isn't that we didn't raise it. We raised it in our opening brief, all right? We just changed slightly in the reply. Can you show me in your opening brief where your claim construction is similar to your gray brief? Seems to me it was pretty different. Thirty-seven. Page 37. Let me start that again, Your Honor. I'm sorry. All right. My understanding is it was page 40. That's where I understood it to be. Page 40, your blue brief? That's right, Your Honor. Judge. I apologize. It begins at 39 and continues to 41. So we did raise it, and Your Honor is correct. I'm not suggesting that that, what did you, no, I think you should look at what you raised there, because I don't know. Yes, and I modified it in the gray brief. The judge made a correct point about that. I'm not disagreeing. But it's entirely different. Well, we think of it as a modification of what we offered in our opening brief. Well, the one you put in your opening brief doesn't really even make sense. No, it's because we had, we made a mistake, and I acknowledged it by correcting it in our reply brief. What was your mistake? Our mistake was that we had, the claim has, in the printed patent has the word or, it should be the word for, and it changes the way it means. That's not what you changed in your bravery. If you didn't put for instead of or, you proposed an entirely new claim construction. I did, that's true. If you read it as a waiver, then we're done with that issue, I suppose. Because I, I really came primarily to talk about the two issues that the judge addressed in his, in his ruling. One has to do with the control question. And if we think that the judge was wrong about the control issue, because our case is a centillion case, which is to say that from the statements of the spokesman, the 30 v. 6 spokesman for the defendants, Dr. Mershon for MasterCard, Christian Avey for Visa, they've all said that the, the Visa MasterCard. Well, can I just ask you a logistical question? My understanding of the case is if we were firm on the local access number, then we don't reach these other issues, the issue of control and whether it includes the database, right? That's true. So if you don't prove, so if, if we were to agree, one, that the two aren't different, aren't alternatives, but you have to have both, and the local means geographic, has some geographic component, then the case is over and we don't even get to an interpretation of control, right? True. Okay. That's right. The reason I wanted, I was, I was mentioning control first is that I wanted to point out that in the judge's, the district court's ruling, which appears on pages, on just two pages of his order, he, this is at pages 10 and 11 of his order. At page 10, lines 24 to 28, he says it's undisputed that defendants don't make cards or configure readers or insert smart cards into readers or engage in functions described in consumer transactions. All true, but irrelevant because our claim has nothing to do with those steps. Our claim one is a system and it, it doesn't require, it's not a multiple user case. It doesn't require a user to do anything. It is a system that permits a user to insert a card and it tells what happens when the card is inserted, but it doesn't require a user to do anything. Neither does claim 14. So the judge's comment is not relevant to the control point. Can we go back to, because I don't see how we remotely get to that issue. Can we go back to the claim construction of database and how you produced any evidence that MasterCard or Visa has a database that infringes the patent? Yes. We have the declaration of Mr. Gupson, our expert, unrebutted by any declarant from the other side. What did he say? I thought he said he didn't, he doesn't know that Visa and MasterCard use a database. He said he assumed they thought they did. He infers that they have one from the information that he had. He makes an inference from facts that were presented to him through the documents produced by the defendants. And he says in, at 2748-2749 of our appendix, his paragraph 19, he says it can be reasonably inferred that there is such a thing because, he says, in order to, if you're going to root and reroute transactions, you must have a list of the places to which you're going to root and reroute. A database is simply a collection of information that a computer can readily retrieve. That's all it is. So he infers that it exists, and none of their declarants says it is itself. That's really speculative. I think they do. I mean, they've presented evidence that the database under your patent doesn't exist in their systems. There is no database of local access numbers. They just say it. They don't cite any documents. Well, your expert just says it too. He cites to a document. They don't cite to anything. Well, what does that document say? That document says- Where is that in the record? Pardon? Where is that in the record? It's on page nine of our brief, which cites to his declaration and quotes his declaration. Well, you just said it's cited to a document about the system. He cites to a document. You ask me where do I find it, it's on page nine and ten of our brief. Who cites to a document? Our declarant. The expert cites to a document, and what document is he citing to? He calls out the documents. I can't tell you the name of them offhand without reading them all. But he identifies the documents by production number in paragraphs 10 and 19 of his declaration. Where is his declaration in the record? It's at 2743 to 2744, and again at 2748 to 49. And we cite to that at pages eight and nine of our opening brief. Not just cite to, but quote the words, literally. At page nine of our opening brief, Your Honor, quoting from paragraph 19 of Mr. Gusman's declaration, he says, although they do not specifically, the documents don't specifically show a database, it can be reasonably inferred to exist by one skill in the art from the information provided in the documents and the deficit and testimony of the BESIN MasterCard experts. The standard processing as described in the documents clearly root transaction authorization requests through the MasterCard and BESIN networks to processing assets other than the default processor. This routing requires a list of routing addresses which must be stored in the database within the system in order for the router to know where to route the request to. Now that's his inference from the fact that there is such routing taking place as called out in their documents. Their declarants don't say it isn't so. They don't even deny that it's so. They don't address these declarations at all. They had plenty of opportunity to put in declarations rebutting what he had to say and they did not. And if you look at the judge's order, the judge doesn't cite any evidence either. Well, I understand that, but I don't understand why what you're describing as this routing thing is a database with a list of access numbers for network service providers and geographic information for each access number in the database. It's that last part of the court's construction that I don't see how that provides. But my understanding is that Visa and MasterCard systems could care less where the card is being used and doesn't have a geographic location. That's what they say, but they don't provide any documentation to prove it. We don't provide any documentation to prove it either. I do. How does this go to the geographic limitation?  First at page 10 of our opening brief, Gusson references in his declaration what Mershon, their 30B6 spokesman, said on this subject. And? That there is a plurality of geographically separate Visa data processing centers in the United States. How does that demonstrate that they've met the limitation of local for the cardholder? Because, as MasterCard says in its annual statement, which Gusson also relies upon, they say in their annual report for the year ending 2012, rest assured that your transaction will be processed at the geographic location closest to where your transaction is taking place. Can it be clearer? Why talk of processing a transaction at a location closest to where the transaction takes place if the system isn't directing the transaction to the nearest geographical processing location? It only makes sense. This system is presented with millions and billions of transactions in any time period you can think of. The system would go on tilt if a transaction were not routed to the nearest place for processing. Because even if the processing only takes a matter of seconds, it still ties up the system for that period of time. And is there any evidence that shows that MasterCard uses a local access number? It isn't MasterCard that uses the local access number. It's the system that uses the local access number. And they use the local access number? Yes. And remember, the judge defined local access number to mean, he said in his claim interpretation ruling, that the local access number and default access number can be exactly the same number. Okay. The other side asked him to define them to be mutually exclusive, and he said he wouldn't. Well, the judge defined local access number as a number that indicates a designated or selected network service provided specific to the locale of the user at the time the user attempts access. So the local access number has to be keyed to the user. Yes. And the reason it is keyed to the user is that the user's card tells you where he is, not the card, but the reader, which sends the information for processing, says where the user is. So in order for you to win, the readers have to use a number that's specific to their locale. They can't be sending things off to another part of the country. No, no, wrong. The claim says the system uses one of two, either a default number or a local access number. So if it uses a default number, this whole discussion of the geography becomes irrelevant. Well, that's not the district court's construction, and it seems to me that you haven't made any significant challenges to the district court's construction. I don't know what construction. It doesn't matter whether the district court's construction of local access number is right or wrong. If you agree with the district court that the local access number and default number can be the same number, which is what he said in his claim interpretation, a ruling that stands unchallenged. Okay. You're well into your rebuttal. We'll restore a minute or two when we get to the other side. Thank you. May it please the court. The fundamental problem with the case that the plaintiffs are trying to put forth here is that the patent claims are directed to facilitating a user's network access when traveling by enabling the selection of local access numbers that are specific to the user's location. And the systems of Visa and MasterCard, which process transactions in a way that is independent of the location where the transaction originates, simply do not do that. So what do you, I mean, you heard your friend recite portions of this brief which include cites to the appendix and declarations. So I guess he was arguing that certain of the testimony that appears on page 10 of his brief demonstrates that even if we accept the geographic limitations, there's still infringement because you meet that through your processing centers. You heard what he said. I did. And I'll address that. The only evidence in the record is witness statements submitted by Visa and MasterCard that clearly indicate that the geography, the location where the transaction originates, is not material to the processing of the transaction. My friend has pointed to the declaration of Mr. Gusson, which is entirely conclusory and entirely speculative. What about some document he was referring to from your client that says something about... Yeah, the 10-K document that was referred to. It's in the appendix at page 2738. And I'm going to read from it for the court. What it indicates is that transactions require fast, reliable processing, such as those submitted using, this is the important part, a contactless card or device at a toll booth. This case is not about contactless cards. This case is about cards that have to be inserted into a reader, so-called contact cards. This is the second time that we've been before this court. The first case was on contact. The first case was about contactless cards. It was resolved. Those cards are not at issue in this case. This document only relates to contactless cards. The statement that they're relying on with respect to that 10-K, it only relates to contactless cards. It's not relevant to the question of how is the transaction processed when it originates from a contact card. In addition, my friend has pointed to this stand-in processing. And in particular, they were focused on Mr. Gusson's paragraph 18 and 19. Paragraph 18 and 19, however, indicates explicitly, in fact, Mr. Gusson himself says that he can find no documents that actually disclose a database that has geographic information or local access number. And to fill that hole, what do they do? Well, what happens is Mr. Gusson speculates and provides complete guesswork that stand-in processing must somehow use geographic information. My friend indicated that that's based upon the documents. But there's no document cited in that paragraph where there's speculation about how stand-in processing works. In fact, the only evidence is the evidence, again, provided by the witness statements provided by Visa and MasterCard. These statements are based upon personal knowledge, about the people who actually work with these systems, know how they operate, and use them on a daily basis. The complaint that they're not based on documents is, quite frankly, a red herring. Of course, there's no documents out there that tell what the system doesn't do or what the system doesn't have. What the witness statements show is what the systems do do. And with respect to stand-in processing, what they do is they provide an alternate form of processing when the issuer is unavailable. If the issuer is unavailable, then Visa will stand in, MasterCard will stand in, to make sure that that transaction can still be processed and the matter can go through. It has nothing to do with where the transaction originated from. It doesn't matter if the transaction started here in D.C., in New York, in California, or anywhere in between. It's simply a matter of filling in when that issuer is not available. The next issue that I want to address, of course, is this issue of control, which is the third ground on which the district court granted summary judgment to MasterCard and Visa. And we don't reach that if we agree with the district court. There's no reason for the court to reach it if, in fact, we've determined that the court's construction of local access number and database is correct and the witness statements that there is no geographic information and it's immaterial. I'm happy to address the control if Your Honor would like, if Your Honor would prefer not to. With respect to control, we think it is actually an independent basis and all the evidence indicates that neither Visa nor MasterCard put into place the entire system that is claimed by the 464 patent. Again, this is based upon the witness statements that Visa and MasterCard have provided and indicate that the Visa and MasterCard systems are based upon what's called the four-party model. We gave a description of the four-party model in our briefs. Both Mr. Abai and Dr. Mershon, both of whom provided statements based upon their firsthand knowledge, personal knowledge, indicate that Visa and MasterCard have no insight into and no control over how the merchant connects to the acquiring bank. They don't govern that. They don't dictate that. They have no insight into it. The connection between the merchant and the acquiring bank is solely the responsibility of the acquirer. But this connection is really what's key with respect to the patent. The patent requires, the claims require, an application program that facilitates connecting to the network. That connection is outside the purview of Visa and MasterCard. There's no direct relationship between Visa, MasterCard, and the merchants who are doing that connection to the acquiring bank. Now, what Smartmetric has focused on are specifications. And they've suggested, again, based upon Mr. Gusson's sort of speculation, that these specifications must give some type of control because they're specifications. But in fact, that conclusion is not tied at all to any actual evidence in this case. And the only evidence in this case is that, again, provided by Dr. Mershon, Mr. Abott, and Dr. Grimes, the witnesses on behalf of Visa and MasterCard, which indicate that these specifications talk about and tell how a card talks to the reader. We call them interoperability specifications. And that's so that if I take my card down the road here in D.C. and I put it into a reader, it's going to work the same way as if I go to California and I put my card in a reader because, again, it doesn't matter where I put my card into that reader and where I use it because geography is not material to the processing of the transaction. So what these specifications talk about is, how is it that the reader and the card must physically connect to each other? How is it that the data can be exchanged? How is it that the card gets powered by the reader? What happens after that? What the merchant does with it? How the merchant talks to the acquiring bank? Not part of the specifications, not controlled, not at all an issue in terms of how Visa and MasterCard operate their system. And because of that, and quite frankly, that's the basis upon which the district court founded their, based his ruling on the lack of control. It cannot be said under this court's precedent, primarily the Centillion case, which my friend did cite to, but primarily that Centillion case, it can't be said that there's control. In fact, our facts are much better than the facts in Centillion. In Centillion, there was actually a customer relationship between the accused infringer and those actors who performed the other steps or provided the other components of the accused system. Here, there is no direct relationship between Visa, MasterCard, or the merchants. In addition, in the Centillion case, the accused infringer, Quest, provided actual software that was functioning at their client locations and that performed the functionality that was required in order to satisfy the claim limitations. Here, we're not providing any such software. We provide specifications unrelated to the subject matter of the patent, but we provide these specifications. They're a complete red herring. They have nothing to do with control and they do not undercut the district court's decision. The last thing that I will address for the court is the issue of the claim construction, particularly the claim construction of local access numbers, since that's part of the topic at the beginning. The district court's construction, we believe, is proper and gives effect to the words of the claim. Namely, the court adopted the construction of access number from the prior case as a number that indicates a designated or selected network service provider and then gave plain meaning to the term local. That is, it's pertaining to a particular location. This, we believe, is completely consistent with how the invention is described throughout the specification. The specification absolutely contemplates that the user's location is not fixed, that it will change. The disclosure of the invention at column 2, lines 39 to 46, makes clear that the invention solves this problem of how does a user get access when traveling by providing a local access number and the ability to have that local access number used at that user's location when they're traveling. For these reasons, this is the right construction and no other construction that Smartmetric has offered in either of their briefs before this court, quite frankly, we think should be adopted and is any better of a construction or can be supported better than the construction that the court has put forth. Are there any other questions? I will get to you for the rest of my time. Thank you. Thank you. Mr. Bright? Thank you. Under Centillion on the control issue, there are two fact findings that the court has to make. One is that there was benefit to the infringer. We put in the evidence of the testimony of the financial folks at Beeson Master Park, that there's billions of dollars in savings on the fraud and they have no declaration or evidence to the contrary, and the district judge made no finding that there wasn't benefit. So that issue, it seems to me, we win that one hands down. In terms of whether they control everything, we quoted at our opening brief at pages 10 to 15 the statements of their declarants, their 30B6 witnesses, saying that in order to ensure interoperability, Beeson Master Park dictates how the cards work with the readers, how the readers work with the programs, how the programs work with the networks, and they control all of that and dictate all of that. In fact, Merchant said, you can't put the name on the card, Beeson or MasterCard, unless your card is interoperable, meaning it will work in any reader, anytime, anywhere. And that reader is at the location of Merchant, and regardless of where that information goes from Merchant, Merchant to Acquirer, Merchant to Issuer Bank, Beeson dictates and MasterCard dictates how the system is to operate. Otherwise, you can't be a member of their system. You can't be an enrolled merchant or bank or anything else. That's absolute control. Just a quick question before your time runs out. The statement of related cases in the Blue Brief, you indicated there were no other cases other than this one. Is it, since that time, have you asserted this patent against any other defendants? No, Your Honor. No. Now, I wanted to come back to the local access number. There are at least three things that I think I asked this Court to keep in mind. One is that the claim says, using one of local or default access number, not providing, using. So the system doesn't have to provide a local access number at all. Second point is, the District Court, in making claim interpretations, said that the local access number and default number can be one and the same. So at least part of the time, there's infringement if the default access number is used, which is all the claim calls for. Use, not provision. My opponents didn't even argue in the trial court that the system must provide both. That's an argument they made on appeal. Speaking of the topic of waiver, which Judge Hughes raised a little bit ago, they waived it. Okay. Thank you. We have the argument. Thank you. Thank both counsels. The case is submitted.